UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WINGATE INNS INTERNATIONAL, INC.,
          Plaintiff,

v.

MARGARET SWINDALL,
          Defendant.

Civil Action No. 12-248 (CCC)

OPINION

**CECCHI**, **District Judge.**

This matter comes before the Court on Plaintiff Wingate Inns International, Inc.'s ("Plaintiff") motion to dismiss the first, second, fifth, sixth, and seventh counterclaims asserted by Defendant Margaret Swindall ("Defendant"). Submissions made in support of and in opposition to the instant motion have been carefully considered by the Court.[1] The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Based on the reasons that follow, Plaintiff's motion to dismiss is granted without prejudice.

I.    **BACKGROUND**

Plaintiff is a corporation that runs a hotel franchise system. On October 20, 1999, Plaintiff and Defendant entered into a Franchise Agreement ("Agreement") for the operation of a 116-room guest lodging facility ("facility") located at 2516 West Lakeshore Drive, Tallahassee, Florida. (Complaint ¶ 6 and Ex. A.) According to the Agreement, Defendant was required to operate the facility as a Wingate hotel for twenty years. (Compl. Ex. A § 5.) During that time,

___

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. Of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Defendant was to make various payments to Plaintiff for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees and other fees. (Compl. Ex. A § 7 & Schedule C.) Plaintiff alleges that it subsequently learned that Defendant had transferred control of the facility,[2] and as a result, Plaintiff terminated the Agreement effective November 4, 2010. Compl. ¶ 15.)

On January 12, 2012, Plaintiff filed this action seeking an accounting of the revenues earned at the facility during the time it was operated as a Wingate facility and to recover any outstanding fees. (Pl. Br. 1.) Defendant answered and asserted the following counterclaims: (1) fraud based on Plaintiff's promises that the hotel would be profitable; (2) violation of the New Jersey Consumer Fraud Act; (3) breach of contract; (4) breach of implied duty of good faith and fair dealing; (5) lost income; (6) violation of the Georgia Fair Business Practices Act; and (7) violation of the Florida Franchise and Distributorship Law. (Def. Answer.) Plaintiff thereafter filed this motion to dismiss Defendant's first, second, fifth, sixth, and seventh counterclaims.

## II.   LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels

---

[2] In her Answer, Defendant states that she lacks knowledge or information sufficient to form a belief as to whether she transferred the facility. (Def. Answer ¶ 15.)

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion [s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (internal citations omitted).

The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). During a court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Twombly, 550 U.S. at 583 (quotations omitted).

### III. DISCUSSION

#### A. First Counterclaim: Fraud

Defendant asserts a counterclaim for fraudulent inducement, alleging that prior to her purchase of the franchise, Plaintiff's sales person assured her that the facility would be "an extremely profitable business" and that if she built a 116 room facility, she would receive "extra marketing dollars." (Def. Counterclaims ¶¶ 37-39.) Defendant claims that contrary to these promises, Plaintiff never provided marketing or other support after she purchased the franchise. (Id. ¶¶ 40-42.) Defendant further alleges that she requested "support as to all aspects of the operation of the franchise . . . to enable the franchise to be profitable," but that she did not receive such assistance from Plaintiff. (Def. Answer ¶¶ 3-6;10-14.)

In order to set forth a claim for fraudulent inducement, a claimant must establish: (1) a material representation of a presently existing or past fact; (2) knowledge or belief of its falsity; (3) an intent that the other party rely on it; (4) reasonable reliance by the other party; and (5) resulting damage to the other party. Travelodge Hotels, Inc. v. Honeysuckle Enters. Inc., No. 02-2889, 2005 U.S. Dist. LEXIS 27791, at *22 (D.N.J. Nov. 7, 2005). Plaintiff argues that

Defendant cannot establish the fourth factor, reasonable reliance on a false representation, in light of the express terms of the provisions contained in the Agreement. (Pl. Br. 4-6.)

For example, Section 17.7.2 of the agreement states that "[n]either we nor any person acting on our behalf has made any oral or written representation or promise to you on which you are relying to enter into this Agreement that is not written in this Agreement. You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement." (Compl. Ex. A § 17.7.2.) Section 17.7.3 states that the Agreement is the entire agreement between the parties and that there are no other oral or written representations. (Comp. Ex. A § 17.7.3.) Similarly, Section 17.7.4 states that "no salesperson has made any promise or provided any information to you about projected sales, revenues, income, profits or expenses from the Facility," beyond what is stated in Section 19 of the Uniform Franchise Offering Circular or the Agreement. (Compl. Ex. A § 17.7.4.) Finally, Section 14.3 states that "[t]here are no express or implied covenants or warranties, oral or written, between [Plaintiff] and [Defendant] except as expressly stated in this Agreement." (Compl. Ex. A § 14.3.)

The Court finds that based on these integration clauses, Defendant's reliance on Plaintiff's alleged prior representations is not reasonable. See Jackson Hewitt Inc. v. Childress, No. 06-0909, 2008 U.S. Dist. LEXIS 24460, at *32 (D.N.J. Mar. 21, 2008). In Jackson, this Court rejected the defendant's argument that he was fraudulently induced into signing the franchise agreement at issue. The Court held that Defendant's reliance on prior representations was unreasonable because the franchise agreement contained integration clauses that superseded all earlier representations, understandings, and oral and written agreements. Id. at *32-33. Thus, the Court concluded that "[i]n light of the integration clause and disclaimers contained in the Franchise Agreements, Defendant's alleged reliance on any prior representations not contained

in the Franchise Agreements was unreasonable as a matter of law."[3] Id. at 32; see also Ramada Franchise Sys. v. Eagle Hospitality Grp., No. 03-cv-3585, 2005 U.S. Dist. LEXIS 45102, at *27 (D.N.J. June 24, 2005) ("The plain language of the integration clause states that the License Agreement supersedes all *previous* oral and written representations.").

Also on point is the Court's decision in Chen v. HD Dimension, Corp., No. 10-cv-863, 2010 U.S. Dist. LEXIS 120599 (D.N.J. Nov. 15, 2010). There, the plaintiff alleged that the defendant's misrepresentations induced him into signing an employment agreement. Id. at *14. The plaintiff further alleged that the defendant was aware that the representations were false at the time they were made and intended for the plaintiff to rely on them. Id. at *14-15. The Court explained that the employment agreement's "entire understanding" clause required dismissal of the plaintiff's fraudulent inducement claim. Id. at 19-24. The "entire understanding" clause stated that the defendant made no "representation with respect to the subject matter of [the] Agreement or any representations including the execution and delivery [t]hereof, except such representations as are specifically set forth [t]herein." Id. at *20. Therefore, the Court held that the express terms of the plaintiff's employment agreement barred him from asserting a cause of action for fraud stemming from any alleged representations that *were not specifically set forth in the agreement*. Id. at *24.

Defendant's citation to Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369 (N.J. Super. Ct. App. Div. 1960) is unavailing. In that case, the plaintiff alleged that it was induced by the fraudulent oral representations of the defendant to lease from the latter a hotel.

---

[3] Defendant argues that Jackson is not applicable to this case because the franchise circular in Jackson "specifically stated no earnings claims were being provided." (Def. Opp. 11.) However, Defendant provides no explanation as to how or why this factual distinction affects the holding in Jackson that "misrepresentations are not actionable if an integration clause is contained in the franchise agreement governing the parties' relationship." Jackson, 2008 U.S. Dist. LEXIS 24460, at *33.

Id. at 375. The alleged representations consisted of statements that certain structural defects in the leased premises would be "corrected. . .by Memorial Day." Id. However, the repairs were not completed until the first week in August. Id. The Superior Court of New Jersey, Appellate Division rejected the defendant's argument that an integration clause disaffirming any representations regarding the physical condition of the property barred the plaintiff's claims. In doing so, the Court specifically explained that the alleged misrepresentations did not relate to "the physical condition of the property or its operation," as covered by the integration clause, but to the "repair of certain structural defects in the leased premises." Id. at 379. In this case, however, the integration clauses clearly cover the alleged representations regarding profits and expectations. Regardless, Ocean does not provide support for Defendant's argument because the court ultimately held that the plaintiff's pleadings and affidavits did not support a finding of fraudulent intent. Id. at 383-84.

In sum, Defendant has not sufficiently alleged fraud in the inducement, and as such, her first counterclaim is dismissed.

### B. Second Counterclaim: Violation of the New Jersey Consumer Fraud Act

Defendant's second counterclaim alleges that Plaintiff violated the New Jersey Consumer Fraud Act ("NJCFA"). (Def. Answer 13.) The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2 (2012). The NJCFA is intended to protect consumers who purchase "goods or services generally sold to the public at large." Marascio v. Campanella, 689 A.2d 852,

856-57 (N.J. Super. Ct. App. Div. 1997); see also Arc Networks, Inc. v. Gold Phone Card Co., Inc., 756 A.2d 636, 637-38 (N.J. Super. Ct. App. Div. 1997). The NJCFA's focus is thus "pointed to products and services sold to consumers in the popular sense." Id. at 638.

Plaintiff argues that Defendant cannot sustain this counterclaim because Defendant is not a "consumer" and the sale of a franchise is not "merchandise." In other words, Plaintiff contends that a franchise is not consumer merchandise that is typically offered for sale to the general public. (Pl. Br. 7-10.) The Court agrees.

In J&R Ice Cream Corp. v. CA Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994), the Third Circuit specifically addressed the question of whether the NJCFA applies to franchises. The Court explained that:

> even where franchises or distributorships are available to the public at large in the same sense as are trucks, boats or computer peripherals, they are not covered by the Consumer Fraud Act because they are businesses, *not consumer goods or services*. They never are purchased for consumption. Instead, they are purchased for the present value of the cash flows they are expected to produce in the future and, like the technology and services acquired in BOC Group, bear no resemblance to the commodities and services listed in the statutory definition of "merchandise" or the rules promulgated by the Division of Consumer Affairs.

Id. at 1274 (emphasis added).

Defendant cites to Kavky v. Herbalife Int'l of Am., 820 A.2d 677 (N.J. Super. Ct. App. Div. 2003), a case in which the Appellate Division carved out a narrow exception to the rule delineated in J&R Ice Cream. However, the situation in Kavky is factually distinguishable from the present case. See Kavky, 820 A.2d at 678-79. There, the franchisor used general advertising over the Internet to solicit distributors for a variety of products it sold in the United States. Id. at 679. Specifically, the franchisor's offer was "to make anyone a distributor in return for $85 and to provide 'Pre-Paid Retail Internet Customers' at $8.50 per customer." Id. In a situation that involved such "mass-marketing to the public," the purchaser's role in Kavky was more akin to

that of a traditional consumer than a franchisee. Id. at 681. As such, the application of the NJCFA in Kavky is inapposite to the present case. See Wingate Inns, 2012 U.S. Dist. LEXIS 115745 at *24-26 (distinguishing Kavky and granting the hotel franchisor's motion to dismiss the franchisee's NJCFA counterclaim); In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, No. 06-cv-5774, 2009 U.S. Dist. LEXIS 58900, at *112, fn. 24 (D.N.J. July 10, 2009) (noting the conflicting decision in Kavky, but explaining that this Court is "bound by, the Third Circuit's prediction of New Jersey law in [J&R Ice Cream]"); Trans USA Prods. v. Howard Berger Co., 2008 U.S. Dist. LEXIS 61069, at *18-19, fn 5 (D.N.J. Aug. 4, 2008) ("In J&R Ice Cream Corp., the Third Circuit held that the NJCFA does not apply to distribution or franchise transactions. . . Although New Jersey courts have expressed disagreement with this result, the Court finds the Third Circuit's expression of the policy underlying the NJCFA accurate."). Application of the principles set forth in J&R Ice Cream thus requires dismissal of Defendant's NJCFA counterclaim.

### C. Fifth Counterclaim: Lost Income

Defendant's fifth counterclaim alleges that she had the opportunity to obtain employment in excess of $100,000.00 per year, was deprived of at least twenty-five years of employment, turned down the opportunity to purchase a competing franchise, and would have earned income in excess of $500,000.00. (Def. Answer ¶¶ 88-95.) The Court finds that these arguments are more appropriately addressed at the damages phase of this litigation. See Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC, No. 10-cv-4120, 2012 U.S. Dist. LEXIS 90564, at *30-31 fn. 17 (D.N.J. June 28, 2012) ("RRF also seeks to recover lost profits. To recover lost profits, a party must prove the amount of *damages* sustained.") (emphasis added); McLane Foodservice, Inc. v. Ready Pac Produce, Inc., No. 10-cv-5076, 2012 U.S. Dist. LEXIS 76343, at

*4 (D.N.J. June 1, 2012) ("Plaintiff is seeking *damages* allegedly resulting from the outbreak, including, but not limited to, litigation costs, destruction of product, lost business and *lost profits*.") (emphasis added). Therefore, Defendant's fifth counterclaim is dismissed without prejudice and without otherwise affecting her right to seek appropriate remedies for any of her remaining claims.

### D. Sixth Counterclaim: Violation of Georgia Fair Business Practices Act

Defendant's sixth counterclaim alleges that Plaintiff violated the Georgia Fair Business Practices Act ("GFBPA") by engaging in deceptive practices. The GFBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. § 10-1-393(a) (2012). According to the statute, "'[c]onsumer acts or practices' means acts or practices intended to encourage consumer transactions." Id. at § 10-1-392(a)(7). "Consumer transactions," in turn, refers to "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." Id. at § 10-1-392(a)(10).[4]

Further, the Georgia Court of Appeals has held that "[o]ne may bring a private suit under the FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general." Pryor v. CCEC, Inc., 571 S.E.2d 454, 455 (Ga. Ct. App. 2002) (internal quotations and citations omitted). Thus, the GFBPA "does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur *in an essentially private transaction.* Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have 'impact' on the consumer marketplace and any act or practice

---

[4] The statute broadly defines trade and commerce as "advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of this state." Ga. Code Ann. § 10-1-392(a)(28).

which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA." Id. (emphasis added) (internal quotations and citations omitted).

Therefore, in considering whether an allegedly deceptive practice is within the scope of the GFBPA, Georgia courts have concluded that "two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact." Georgia v. Meredith Chevrolet, Inc., 244 S.E.2d 15, 18 (Ga. Ct. App. 1978), aff'd, 249 S.E.2d 87 (Ga. 1978). If consideration of both factors reveals that the alleged act was directed at consumers, the court then considers "the fairness or deceptiveness of the act or practice." Id.

Plaintiff argues that the sale of a franchise under the facts of this case is not covered by the GFBPA. The Court agrees, finding a case from a district court in this Circuit to be instructive on the matter. In Vino 100, LLC v. Smoke on the Water, LLC, No. 09-cv-4983, 2012 U.S. Dist. LEXIS 46465 (E.D. Pa. Mar. 30, 2012), the plaintiffs-franchisors brought suit against the defendants-franchisees for, inter alia, violation of the Lanham Act. The franchisees counterclaimed that the franchisors violated the GFBPA by making certain false and misleading statements in the negotiations that led to the purchase of the franchise. Id. at *2. In rejecting the franchisee's GFBPA claim, the Court held that the "allegedly deceptive acts occurred in the context of a private transaction." Id. at *53. Similarly, here, the alleged misrepresentations appear to have occurred in conversations between Plaintiff and Defendant. Defendant proffers no argument or evidence that the offending statements were otherwise disseminated to the public. Moreover, Defendant has not argued that the purchase of the franchise business was "an acquisition made 'primarily for personal, family, or household purposes.'" Id. at *54 (quotations omitted). Indeed, the submissions of the parties clearly indicate that Defendant

purchased and operated the Wingate franchise hotel as a business. As such, the GFBPA is inapplicable and Defendant's counterclaim should be dismissed. See In re Ford Motor Co. E-350 Van Prods. Liab. Litig., No. 03-cv-4558, 2010 U.S. Dist. LEXIS 68241, at *109-110 (D.N.J. July 9, 2010) (granting the defendant's motion for summary judgment as to the plaintiff's GFBPA claim because there was no evidence that the vans at issue were purchased for personal, family or household use).

### E. Seventh Counterclaim: Violation of Florida Franchise and Distributorship Law

Defendant's seventh counterclaim alleges a violation of the Florida Franchise and Distributorship Law ("FFDL"). Plaintiff argues that Defendant's claim is barred by the parties' agreement that New Jersey law would govern all disputes arising from the franchise agreement. (Pls.' Br. 16.)

"In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state." Homa v. Am. Express Co., 558 F.3d 225, 227 (3d Cir. 2009); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (explaining that conflict of law rules applied in federal court must conform with those prevailing in the state court). The New Jersey Supreme Court has cited to the Restatement (Second) Conflict of Laws § 187 (1969) for guidance in construing the choice-of-law jurisprudence. Instructional Sys., Inc. v. Computer Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992). The Restatement in turn provides that the law of the state chosen by the parties will apply, unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and

which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties." Id. (asterisks in original).

Here, it is clear that New Jersey has significant contacts with the parties and the transaction, as Plaintiff's principle place of business is in Parsippany, New Jersey and the parties agreed that any action between them shall be heard in Morris County, New Jersey. (Compl. ¶ 4.) In addition, the application of the choice-of-law provision is not contrary to Florida public policy because the Florida statute contains no anti-waiver provision. Fla. Stat. § 817.416 (2012). As such, parties "operating under Florida law are free to contract away the protections of the statute." Cottman Transmission Sys., LLC v. Kershner, 536 F. Supp. 2d 543, 550 (E.D. Pa. 2008); GE v. Latin Am. Imports, S.A., 214 F. Supp. 2d 758, 769 (W.D. Ky. 2002) (dismissing a FFDA counterclaim because the parties' selection of New York law to govern the relevant contract precluded the claim).

Moreover, district courts in Florida that have considered the issue have allowed choice-of-law agreements to bar the application of the Florida Franchise Act. See e.g., Loehr v. Hot 'N Now, Inc., No. 95-cv-6253, 1998 U.S. Dist. LEXIS 23649, at *6 (S.D. Fla. Feb. 11, 1998) (rejecting a Florida Franchise Act claim based on the parties' contractual agreement that Michigan law would apply); Hardee's Food Sys., Inc. v. Bennett, No. 89-cv-8069, 1994 U.S. Dist. LEXIS 21596, at *15-16 (S.D. Fla. Mar. 23, 1994) (rejecting a Florida Franchise Act claim based on the parties' contractual agreement that North Carolina law would apply). By signing a franchise agreement containing a New Jersey choice-of-law clause, Defendant agreed to receive the amount of protection afforded by New Jersey law, and consequently waived the protections offered by Florida law. See Cottman, 536 F. Supp. 2d at 550 ("Florida's policy is to provide a

franchisee with as much protection as he or she contracts to receive.") As such, Defendant's counterclaim under the FFDA should be dismissed.[5]

### F. Statute of Limitations

Plaintiff further argues that Defendant's fraud, NJCFA, GFBPA and FFDA claims should be dismissed because she did not assert the claims within the applicable limitations periods. Because the Court grants Plaintiff's motion to dismiss based on the reasons set forth above, the Court need not decide the statute of limitations issues.

### IV.  CONCLUSION

Based on the reasons set forth above, Plaintiff's motion to dismiss Defendant's first, second, fifth, sixth and seventh counterclaims is granted without prejudice. To the extent the deficiencies in Defendant's counterclaims can be cured by way of amendment, Defendant is granted fourteen (14) days to file an Amended Answer solely for purposes of amending such counterclaims. An appropriate Order accompanies this Opinion.

DATED: October 22, 2012

_____
CLAIRE C. CECCHI, U.S.D.J.

---

[5] Because the Court grants Plaintiff's motion to dismiss Defendant's seventh counterclaim on this ground, the Court need not consider Plaintiff's additional arguments.

13